# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

ROBERT WESTAN PARRATT,          )
                                )
                    Plaintiff,  )
                                )
            v.                  )          Case No. 4:24-cv-00723-RK
                                )
SOCIAL SECURITY                 )
ADMINISTRATION,                 )
                                )
                    Defendant.  )

## ORDER

Before the Court is Plaintiff Robert Westan Parratt's appeal brought under 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, because the ALJ failed to sufficiently explain why the Plaintiff's mild mental limitation of interacting with others was not incorporated into the RFC to allow the Court to meaningfully consider whether the ALJ's decision is supported by substantial evidence, the Court **ORDERS** that the ALJ's decision is **AFFIRMED in part** and **REVERSED in part**. This case is **REMANDED** for further proceedings consistent with this Order.

## Background

Plaintiff filed an application under Title XVI of the Social Security Act for supplemental security income on March 11, 2022. (*See* Tr. at 15.) After Plaintiff's application was denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an ALJ. Following a hearing, (*id.* at 30-68), the ALJ issued an unfavorable decision denying Plaintiff's application for social security benefits, (*id.* at 11-29). The Appeals Council denied Plaintiff's subsequent request for review, (*id.* at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's unfavorable decision denying his application for supplemental security income under the Social Security Act.

## Standard of Review

The Court's review of the ALJ's decision denying Plaintiff's application for benefits under the Social Security Act is limited to whether the decision "complies with the relevant legal

requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

"Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

### Discussion

### I. ALJ's Decision

In the ALJ's decision, the ALJ conducted the required five-step sequential evaluation. *See* 20 C.F.R. § 416.920. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his filing date, March 11, 2022 (the effective date of his disability). (Tr. at 17.)

At Step Two, the ALJ found that Plaintiff had (1) a severe impairment of migraines, (2) non-severe physical impairments of "obstructive sleep apnea, myoclonus, and obesity," and (3) non-severe mental impairments of "bipolar disorder, generalized anxiety disorder, agoraphobia with panic disorder, autism spectrum disorder, posttraumatic stress disorder ('PTSD'), methamphetamine abuse, cannabis dependence in remission, alcohol use disorder in remission, and Adderall use disorder in early remission." (Tr. at 17-18.) In considering the "paragraph B" criteria for mental functioning, the ALJ found a mild limitation in interacting with others and no

2

limitations in the other three areas of mental functioning (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself). (Tr. at 18-19.) The ALJ found the prior administrative findings of the state psychological consultants persuasive. (Tr. at 18-19.)

At Step Three, the ALJ concluded that neither the severe nor non-severe impairments Plaintiff suffered from individually or collectively met or medically equaled a Listed Impairment. (*Id.* at 20.)

At Step Four, the ALJ established the following residual functional capacity ("RFC"), which is the "most [Plaintiff] can do" despite any "physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 416.945(a)(1). In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence pursuant to 20 C.F.R. § 416.929 and SSR 16-3p, in addition to medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 416.920c.

The ALJ noted that the record documented an official diagnosis of migraines by an acceptable medical source and that Plaintiff reported life-long migraines which impair him "for days at a time," and cause poor concentration and pain which feels "like he is being hit in the back of the head with a ball-peen hammer." (Tr. at 21.) Further, the ALJ considered Plaintiff's statements that he used to have migraines four to five days per week, but at the time of his hearing they occurred four to five times per month with each migraine lasting three to four days. (*Id.*) The ALJ noted Plaintiff's testimony that when he has a migraine "he has to lie in a room" and that he sleeps all day for four to five days of the week. (*Id.*) The ALJ found that the medical evidence was inconsistent with Plaintiff's "reports of constant, debilitating migraines, headaches, and pain." (*Id.*)

First, the ALJ reasoned that Plaintiff's neurological exams were normal and generally revealed that Plaintiff was "alert and oriented" without "acute distress"; that he had normal speech, concentration, reflexes, past-pointing, memory, cortical function, facial strength and sensation, and cerebellar function; that he exhibited "fluent language"; and that he had intact cranial nerves, full extraocular movements, and no asterixis or dysdiadochokinesis, or involuntary movement. (Tr. at 21-22.) Second, the ALJ noted that Plaintiff's migraine treatment was relatively conservative,

3

"consisting predominantly of medication" rather than more aggressive treatments such as Botox injections, nerve blocks, or frequent hospitalizations. (Tr. at 22.)

In addition to the contradictory medical evidence, the ALJ also found Plaintiff's own reports of his activities of daily living to be inconsistent with debilitating migraines. (*Id.*) The ALJ found that Plaintiff reported many activities which are inconsistent with allegations of an inability to work, including helping his brother with construction (home building); helping at times on the family farm; taking out the trash and some grocery shopping; and attending his son's football games (if he takes his medication beforehand). (*Id.*) Moreover, the ALJ noted that the record lacked evidence of muscle atrophy, refuting Plaintiff's claim that he slept all day and all night for four to five days of the week. (*Id.*) Finally, the ALJ found that the record showed that even before Plaintiff's alleged disability onset date, his work history showed "somewhat inconsistent and low earnings." (*Id.*)

The ALJ also considered the opinions of the state agency medical consultants, finding them "largely not persuasive," including that Plaintiff was "limited to medium work, with postural limitations, and with all other environmental limitations."[1] (Tr. at 23.) The ALJ did find that the portion of the state agency medical consultants' opinions determining Plaintiff's noise and light limitations were generally persuasive "given [Plaintiff's] migraines." (*Id.*)

The ALJ concluded that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels," with some non-exertional limitations including exposure to "no more than moderate noise" and no "exposure to direct sunlight or work under bright, focused lighting, such as found in an examination room." (*Id.* at 20.) And based on testimony of a Vocational Expert, who was asked to consider Plaintiff's age, education, work experience, and RFC, the ALJ concluded at Step Five that Plaintiff could perform work such as dining room attendant, floor waxer, and laboratory equipment cleaner—for which significant numbers of jobs exist in the national economy. (*Id.* at 24-25.) Accordingly, the ALJ concluded that Plaintiff was not under a disability from the filing date and denied Plaintiff's application for social security benefits. (*Id.* at 25.)

---

[1] The Court notes, as the ALJ recognized, that the state agency medical consultants did not consider medical documents regarding Plaintiff's neurology examinations and migraine treatment which were submitted after their review. (*See* Tr. at 23.)

4

On appeal, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.

## II. Mental RFC

Plaintiff argues that the mental RFC determination is not supported by substantial evidence because the RFC failed to account for (by either including or explaining the omission of) his non-severe mental impairments and the ALJ's own finding of mild limitations for interacting with others.

At Step Two of the disability analysis, the ALJ determines whether a claimant's impairments are severe. When determining the severity of a mental impairment, the ALJ evaluates the claimant's limitations in four broad areas of mental functioning, commonly referred to as "paragraph B" criteria. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). Paragraph B criteria determine whether the mental impairment meets or equals a Listed Impairment at Step Three. If a claimant does not have an impairment that meets or equals one of the Listed Impairments in Step Three, the ALJ must determine the claimant's RFC. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Both severe and non-severe impairments must be considered in an RFC analysis." *Swarthout v. Kijakazi*, 35 F.4th 608, 614 (8th Cir. 2022).

The ALJ is certainly not required to incorporate mild mental limitations in the RFC, but if the ALJ does not incorporate the limitations, the ALJ must explain why. *See Martinette v. Acting Comm'r, Soc. Sec. Admin.*, No. 4:18-00533-CV-RK, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019) (collecting cases); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The explanation need not be explicit, *see McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011), but the Court must be able to harmonize the ALJ's findings in Step Two and the RFC determination. *Sandra Y. v. O'Malley*, No. 4:24-CV-1531 SRW, 2025 WL 1568215, at *6 (E.D. Mo. June 3, 2025); *see also Chrysler v. O'Malley*, No. 23-05107-CV-SW-WBG, 2024 WL 6969190, at *4 (W.D. Mo. Jan. 13, 2026) (ALJ must "provide a logical bridge between the evidence and the RFC").

In considering the paragraph B criteria at Step Two, the ALJ found that Plaintiff had a mild limitation in the "interacting with others" area, and no limitations in the other three areas. Therefore, the ALJ found that Plaintiff's mental impairments were non-severe because his medically determinable mental impairments caused no more than "mild" limitations in the

paragraph B criteria. *See* 20 C.F.R. § 416.920a(d)(1). The ALJ also found the medical opinions of the state agency psychological consultants to be wholly persuasive. Those opinions likewise found Plaintiff to have a mild limitation in interacting with others. (Tr. 72, 81.) The RFC assessment did not mention or discuss Plaintiff's mild mental limitation, however.

At Step Two, the ALJ recognized, consistent with Social Security Ruling 96-8p, that the mental RFC assessment "requires a more detailed assessment" than the analysis at Step Two and "[t]herefore, the following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. at 19.) The ALJ's RFC assessment, however, lacks any indication that the ALJ actually performed this "more detailed assessment" of Plaintiff's non-severe mental limitations. *Sandra Y.*, 2025 WL 1568215, at *7. The ALJ's cursory statement ("the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis"), without more, is insufficient to account for paragraph B's mental limitations, even if they are mild.[2] *See Berutti v. Saul*, No. 4:20-cv-00641-NKL, 2021 WL 1499313 (W.D. Mo. Apr. 16, 2021) (same statement was insufficient to explain why the mild mental limitation was not included in the RFC); *Sandra Y.*, 2025 WL 1568215, at *7 (same statement, without more, was insufficient to establish the ALJ's "more detailed assessment" in the RFC phase); *Nebgen v. Kijakazi*, No. 4:23-CV-00213-MDH, 2024 WL 1328184, at *2 (W.D. Mo.

---

[2] The Commissioner does not argue that the ALJ's statement is sufficient to support a finding that the ALJ did in fact consider the limitation. Instead, the Commissioner argues that the ALJ was not required to account for Plaintiff's mild limitation because he did not have a severe mental impairment. As explained above, the Court finds here only that the record is insufficient for the Court to consider whether the ALJ's RFC assessment is supported by substantial evidence. The cases cited by the Commissioner establish the proposition that an ALJ's finding of a mild mental limitation at Step Two does not require the ALJ to always assign a corresponding functional limitation in the RFC. *See Johnson v. Berryhill*, No. 4:17-CV-0416-DGK-SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018); *Taylor v. Berryhill*, No. 4:17-CV-01050-DGK-SSA, 2018 WL 5410977, at *3 (W.D. Mo. Oct. 29, 2018); *McRoy v. Berryhill*, No. 6:17-CV-03373-DGK-SSA, 2018 WL 6584481, at *2 (W.D. Mo. Dec. 14, 2018). Accepting this proposition as true, it does not follow that the ALJ need not consider and may ignore non-severe mental impairments in assessing a claimant's RFC. *See Nebgen v. Kijakazi*, No. 4:23-CV-00213-MDH, 2024 WL 1328184, at *2 (W.D. Mo. Mar. 28, 2024) ("Simply because a limitation proves mild does not render obsolete the requirement that the ALJ explain why certain parts of an otherwise persuasive medical opinion failed to impact the RFC."). An ALJ may find that non-severe mental impairments do not require a functional limitation in the RFC assessment; such a finding is subject to substantial evidence review. The difficulty in this case and others like it arises where an ALJ is wholly silent in its discussion of the RFC as to non-severe mental impairments for which the ALJ found, at minimum, a plaintiff has mild limitations. The Court, in these situations, must balance two competing principles: that is, "ensur[ing] that an ALJ does not disregard evidence or ignore potential limitations" while recognizing that ALJ's are not required "to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615.

6

Mar. 28, 2024) ("While the ALJ may not be required to develop an expansive analysis of non-severe limitations within 'paragraph B' criteria when formulating the RFC, substantial evidence requires more than a mere passing reference.").

Here, the ALJ's RFC assessment lacks any reference to mental limitations and the record[3] is similarly missing any information from which the Court can ascertain why the RFC does not include the limitations. The RFC "explanation must be sufficiently detailed so that the Court is not required to speculate as to the reasons behind" the ALJ's finding. *Chrysler*, 2024 WL 6969190, at *4 (internal quotation marks omitted). Therefore, remand is required. On remand, the ALJ should either incorporate a functional limitation into the RFC or provide justification and reasoning for its omission so the Court can properly evaluate whether the ALJ's determination is supported by substantial evidence.

## III. Physical RFC

Plaintiff also asserts that the physical RFC determination is not supported by substantial evidence. Plaintiff argues that to the extent the ALJ found unpersuasive the opinions of the state agency medical consultants, the RFC determination is unsupported where the record contains no other opinions as to Plaintiff's functional limitations stemming from his migraines.

Plaintiff contends that in formulating the physical RFC, the ALJ improperly relied on his own evaluation of the medical evidence and medical expertise, failing to fully and fairly develop the record by obtaining another opinion in support of Plaintiff's physical RFC. Defendant argues that there is no reversible error to the extent (1) the ALJ found the prior opinions unpersuasive in light of Plaintiff's reported daily activities and the objective medical evidence which were inconsistent with debilitating conditions, and (2) that substantial medical evidence supports the

---

[3] If, for example, the ALJ had posed a hypothetical to the Vocational Expert which accounted for Plaintiff's ability to interact with others, the Court could conclude either (1) the ALJ implicitly considered the limitation in the RFC and determined Plaintiff nevertheless retained his capacity to perform activities with the RFC, or (2) the omission did not result in reversible error (in the event that the Vocational Expert determined that the limitation would not affect the jobs available). *See Crissey*, 2021 WL 2624514, at *3-4 n.3. However, the ALJ did not question the Vocational Expert concerning an ability to interact with others in the workplace. Notably, the ALJ *did* pose a hypothetical to the Vocational Expert which accounted for one of the other paragraph B categories (concentration) but still failed to consider the interaction with others category. And moreover, the Court notes that "[r]esponding appropriately to supervision, co-workers and usual work situations" is a "mental activit[y] . . . generally required by competitive, remunerative unskilled work." SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).

ALJ's physical RFC determination based on the consistent and unremarkable objective findings, as well as Plaintiff's conservative treatment.

In determining a claimant's RFC, the ALJ must consider all of "the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Noerper v. Saul*, 964 F.3d 738, 744-45 (8th Cir. 2020) (internal quotation marks omitted). The Eighth Circuit has firmly established that a claimant's RFC "is a medical question" and thus, the ALJ's RFC assessment "must be supported by some medical evidence of the claimant's ability to function in the workplace." *E.g.*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotation marks omitted). While an ALJ's RFC assessment need not rely on any *specific* medical opinion, there must be *some* "medical evidence" of the claimant's functional work abilities. *Id.*

In *Hensley*, for example, the Eighth Circuit found that a "To Whom it May Concern" letter from the claimant's treating physician "summarizing . . . [the doctor's] disability exam that addressed each of [the claimant]'s severe impairments," in conjunction with "extensive . . . treatment records" "provided adequate medical evidence of [claimant]'s ability to function in the workplace." *Id.* (recognizing that "[i]n the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's [RFC] findings" (internal quotation marks omitted)). At bottom, an ALJ's RFC assessment must be supported by some identifiable medical evidence concerning the claimant's medically evaluated functional limitations. *See Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (holding that "facts, observations, and medical conclusions [by claimant's treating physician, treating her for depression, anxiety, and insomnia] which bear directly on the extent of [claimant]'s ability to function in a work environment" provided sufficient medical evidence to support the ALJ's mental RFC assessment). At the same time, because the claimant bears the burden of proof, "the claimant's failure to provide medical evidence . . . should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The Court is satisfied that the physical RFC determination is supported by sufficient medical evidence under the substantial-evidence standard of review. In evaluating the reported debilitating nature of Plaintiff's migraines, the ALJ found that the treatment of Plaintiff's migraines consisted predominantly of medication, including nonprescription Excedrin Migraine as needed,

8

Imitrex nasal spray as needed, and Celexa daily (both for migraines and self-described "severe depression – chronic"). (Tr. at 224.) The ALJ noted that Plaintiff did not require more aggressive treatments such as Botox injections, nerve blocks, or frequent hospitalizations. (Tr. at 22.) The record contains extensive support on this point, strongly indicating that Plaintiff's migraines were under control and treated with conservative medications or that they were not as severe as Plaintiff stated.

In 2018, Plaintiff was seen by medical professionals on February 5, March 11, and March 18. On February 5, Plaintiff reported "mild migraines a few times weekly" which he treated with Excedrin Migraine. (Tr. at 654-57.) He told the physician that when he was a child, he was diagnosed with migraines and "silent seizure activity," that he was treated with Depakote for seizures and migraines which he no longer took, and that his headaches were at that time frequent but less severe. The physician noted, "I'm not sure what to make of his 'silent seizure history.' Fortunately, his migraines have improved in adulthood." On March 11, 2018, Plaintiff's medical history noted "Migraines/Seizures-last one was 3 years ago-hasn't been on any seizure meds until last month when started." (Tr. at 276.)

The next time that Plaintiff's medical records note the presence of migraines is on November 2, 2020—a physician treating Plaintiff noted he had "daily frontal migraines" which were "sometimes worse and are nearly debilitating," treated with Excedrin Migraine and in the past Depakote but neither helped much. (Tr. at 265.) On March 8, 2021, his status had not changed. (Tr. at 272.) His physician started Plaintiff on nasal Sumatriptan spray (Imitrex) because he "had not had as much benefit from pills in the past and this is consistent with data supporting the nasal spray." (Tr. at 274.) Around this same time, on January 12, 2021 and March 1, 2021, Plaintiff saw a neurologist who assessed that he had "intractable migraine without aura and without status migrainosus." (Tr. at 241-45.) The neurologist adjusted Plaintiff's oral medications. The rest of Plaintiff's comprehensive medical history from the rest of 2021 through the middle of 2023 (including at least ten visits with his psychiatrist and/or his neurologist and seven visits with a community support provider) is silent as to Plaintiff's migraines.[4] (*See* Tr. at 376, 381, 386, 421, 423, 586, 600, 604, 612, 618, 624, 630, 633, 640 (Plaintiff reported he had "been active more than most days" on April 24, 2023), 643 (Plaintiff reported he "had been active most days" and didn't

---

[4] The majority of his treatment during this time focused on mental health and sleep issues, and in 2023, his recent autism diagnosis.

9

have any complaints), 645 ("no complaints" on June 19, 2023), 648.)  Plaintiff continued taking his prescription medications during this time, including Imitrex.  (Tr. at 661-64.)

Finally, Plaintiff's medical records indicated normal and positive neurologic and appearance findings.  The neurological exams specifically cited by the ALJ were conducted by a primary care physician (who Plaintiff saw for complaints of epilepsy and migraines) and later a neurologist Plaintiff was referred to by the primary care physician for his reported history of migraines and seizures.[5]  (*See* Tr. at 241, 244-43, 261-64.)  *See also Jones v. Colvin*, No. 6:15-CV-03336-NKL, 2016 WL 915290, at *8 (W.D. Mo. Mar. 7, 2016) ("Although diagnostic imaging and abnormal neurological examinations are not required to diagnose migraines, the absence of objective findings, in the context of the whole record, supports a conclusion that [the plaintiff's] migraines were not as limiting as alleged.").[6]

In addition to the medical evidence, Plaintiff's "own description of [his] limitations" supports the physical RFC.  *Noerper*, 964 F.3d at 744-45.  Plaintiff reported helping his brother with home building; working on the family farm; doing chores such as taking out the trash, cooking meals, and grocery shopping; and leisure activities like rock hunting and attending his son's sports games.  (Tr. at 635.)  Insofar as Plaintiff argues that the ALJ failed to account for absences from work on account of Plaintiff's migraines or that Plaintiff performs these activities only when able, the Court notes that the ALJ did not dispute that Plaintiff experienced migraines; rather, "the ALJ determined that the statements about the intensity, persistence, and limiting effects of [his] symptoms were inconsistent with the medical evidence, and therefore an RFC imposing a limitation for absences due to migraines was not required."  *Rhodes v. Saul*, No. 4:18-cv-00986-NKL, 2019 WL 5618084, at *4 (W.D. Mo. Oct. 31, 2019).

The Court discerns no reversible error here in the physical RFC determination and finds that it is supported by substantial evidence in the record and declines Plaintiff's invitation to re-weigh the evidence presented to the ALJ.

---

[5] In addition, the medical record contains numerous other normal or positive neurological findings in 2018, 2020, 2021, and 2022.  (*See* Tr. at 462, 466, 469, 475, 504, 513, 540, 606, 653.)

[6] The Court would not find that normal neurological exams, alone, would support the RFC determination in this instance; however, in the context of the whole record, they do lend some medical support.

**Conclusion**

Therefore, after careful consideration and review, the Court **ORDERS** that the ALJ's decision is **AFFIRMED in part** and **REVERSED in part**. This case is **REMANDED** for further proceedings consistent with this Order.

     **IT IS SO ORDERED**.


                              s/ Roseann A. Ketchmark
                              ROSEANN A. KETCHMARK, JUDGE
                              UNITED STATES DISTRICT COURT

DATED: March 25, 2026